**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Candie McKay Shearin, Appellant.

Appellate Case No. 2022-001594

———————————

Appeal From Lexington County
Walton J. McLeod, IV, Circuit Court Judge

———————————

Unpublished Opinion No. 2026-UP-407
Submitted July 1, 2026 – Filed August 12, 2026

———————————

**AFFIRMED**

———————————

Appellate Defender Gary Howard Johnson, II, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Senior
Assistant Attorney General Mark Reynolds Farthing,
both of Columbia; and Solicitor Samuel R. Hubbard, III,
of Lexington, all for Respondent.

———————————

**PER CURIAM:** Candie McKay Shearin appeals her conviction stemming from the death of her son, Michael. Michael suffered from a rare genetic disease that caused muscle spasticity, contractures, and severe developmental delays. Shearin was his

primary caregiver.  Michael was twenty-five when he died from sepsis caused by a contaminated stage 4 bedsore.

Shearin was indicted for abuse or neglect of a vulnerable adult causing death.  A jury convicted her of abuse and neglect causing great bodily injury, which is a lesser offense under the pertinent statute.  S.C. Code Ann. § 43-35-85 (2015).  Shearin raises three issues.  She argues the trial court erred in allowing certain photos from the scene of Michael's death and his autopsy, in its jury charges on criminal intent, and in allowing testimony about the blood culture results from Michael's autopsy.  We respectfully disagree with each argument and affirm Shearin's conviction.

## ADMISSION OF PHOTOS

We first address Shearin's argument that the trial court erred in admitting certain death scene and autopsy photos over her Rule 403, SCRE, objection.  Shearin argues the photos should have been excluded because they showed already undisputed facts, were "unduly prejudicial," and were improperly used to show "character" and "generate an emotional response."  We disagree.

"The relevance, materiality, and admissibility of photographs are matters within the sound discretion of the trial court and a ruling will be disturbed only upon a showing of an abuse of discretion."  *State v. Torres*, 390 S.C. 618, 622–23, 703 S.E.2d 226, 228 (2010) (quoting *State v. Shuler*, 353 S.C. 176, 184, 577 S.E.2d 438, 442 (2003)).  Rule 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."  Rule 403, SCRE.  A trial court's decision under Rule 403 "should be reversed only in exceptional circumstances" under the appellate court's "highly deferential standard of review."  *State v. Collins*, 409 S.C. 524, 534, 763 S.E.2d 22, 28 (2014) (citation omitted).

The photos are indisputably difficult to view.  Despite this, the trial court did not err in admitting them for three reasons.

First, the photos went directly to the crime charged.  *Id.* at 534–37, 763 S.E.2d at 28–29 (explaining gruesome photos are admissible when their evidentiary value is "highly probative, corroborative, and material in establishing the elements of the offense[] charged[ and their] probative value outweigh[s any] potential prejudice").  The State used the photos to corroborate the testimony of first responders and the pathologist who performed Michael's autopsy.  *See id.* at 534, 763 S.E.2d at 27 ("If the offered photograph serves to corroborate testimony, it is not an abuse of discretion to admit it." (quoting *State v. Nance*, 320 S.C. 501, 508, 466 S.E.2d 349,

353 (1996))).  The photos also illustrated the severity of Michael's condition (not the condition of his underlying disease, but the severity of his bedsores, malnourishment, insect bites, and filth).  *See id.* at 535–36, 763 S.E.2d at 28 (explaining "photos are not inadmissible merely because they are gruesome, especially where . . . the photos simply mirror the unfortunate reality of the case"); *see also State v. Benton*, 443 S.C. 1, 9, 901 S.E.2d 701, 705 (2024) (emphasizing the "probative force" of crime scene pictures that "g[i]ve important context to . . . testimony and other evidence about . . . the scene").  The "net effect" of the photos was to show how Shearin, who slept four feet away from Michael, saw and left Michael, "which goes straight to circumstances of the crime" for abuse or neglect. *Torres*, 390 S.C. at 624, 703 S.E.2d at 229; *see also State v. Holder*, 382 S.C. 278, 291, 676 S.E.2d 690, 697 (2009) (upholding the trial court's decision to admit autopsy photos in a homicide by child abuse case where the photos showed "the damage to the child would have been difficult to ignore").

Second, the photos directly contradicted information Shearin provided to first responders and investigators, like that she cleaned and fed Michael regularly and had done so on the day he died.  The photos also had the potential to help the jury understand the pathologist's finding that Michael died due to a bacterial infection of the stage 4 sore that likely came from the feces covering it, a finding Shearin attempted to discredit.  *See Collins*, 409 S.C. at 533, 763 S.E.2d at 27 (affirming the admission of graphic pre-autopsy photos and explaining a factor in that decision was that "the nature and extent of the boy's physical injuries as described by the pathologist were in contention by the defense"); *see also State v. Jarrell*, 350 S.C. 90, 106–07, 564 S.E.2d 362, 371 (Ct. App. 2002) (finding the challenged photos supported the charge against the defendant and agreeing "with the trial judge, that while some of 'the photo[s] are graphic, the facts of the case are very graphic' and the photos helped the jury understand the pathologist's testimony").

Last, we reiterate that our standard of review is for abuse of discretion.  The trial court carefully reviewed the challenged photos "to avoid repe[ats] of the same pictures"; had certain parts of the photos redacted (like Michael's facial expressions and private areas); and limited how long the State could display the photos to ensure the jurors focused on the testimony, not the photos.  We see this as an appropriate and thorough exercise of discretion.  *See Torres*, 390 S.C. at 624, 703 S.E.2d at 229 (emphasizing "the trial judge did exercise his discretion by excluding three of the State's photographs"); *Jarrell*, 350 S.C. at 106, 564 S.E.2d at 371 (same); *see also State v. Heyward*, 441 S.C. 484, 504, 895 S.E.2d 658, 668–69 (2023) (explaining "when the trial court actually exercises its discretion in balancing the inherent danger of unfair prejudice posed by [gruesome autopsy] photo[s] against 'high' probative

value, and puts its reasoning on the record for the appellate court to review, the trial court's ruling [for admission] is a decision that [the appellate court] will almost always find within the trial court's discretion" (footnote omitted)).

Though we have given three reasons we find it was not error to admit the photos, if we are mistaken in that finding, any error would be harmless due to the overwhelming evidence of neglect resulting in great bodily injury, which was Shearin's ultimate conviction. *See Collins*, 409 S.C. at 537–39, 763 S.E.2d at 29–30 (holding any error admitting photographs of injuries sustained in deadly dog attack would be harmless because there was overwhelming evidence of guilt). The State presented significant testimony about the state of Shearin's home, how Michael was found when he died, and what led to his death—namely, the soiled stage 4 bedsore on his backside. Thus, error or not, we respectfully disagree with Shearin's argument that the photos warrant reversal.

**JURY CHARGE**

We next address Shearin's argument that the trial court erred in "failing to properly charge" the criminal intent required for abuse or neglect of a vulnerable adult under the statute. The intent required for the relevant offenses is "knowingly and willfully." § 43-35-85(C), (E)–(F). Shearin concedes the trial court explained the terms to the jury but argues the explanation was not sufficient. We disagree.

This court reviews a trial court's decision on jury charges under an abuse of discretion standard. *State v. Grier*, 427 S.C. 107, 117, 828 S.E.2d 782, 787 (Ct. App. 2019). If the trial court's refusal to give a requested charge is "both erroneous and prejudicial to the defendant," reversal is warranted. *Id.* (quoting *State v. Marin*, 415 S.C. 475, 482, 783 S.E.2d 808, 812 (2016)).

Shearin requested the trial court provide a lengthier description of the meanings of knowingly and willfully in its instructions to the jury, but a trial court is only required to charge "the current and correct law of South Carolina" and "adequately communicate the law in light of the issues and evidence presented at trial." *Id.* at 117, 828 S.E.2d at 787 (quoting *Marin*, 415 S.C. at 482, 783 S.E.2d at 812); *State v. Miles*, 421 S.C. 154, 159, 805 S.E.2d 204, 207 (Ct. App. 2017). The trial court met those obligations here. *See Brown v. Stewart*, 348 S.C. 33, 53, 557 S.E.2d 676, 686 (Ct. App. 2001) ("It is not error to refuse a request to charge when the substance of the request is included in the general instructions. . . . If the instructions of the trial court, construed as a whole, correctly state the law, there is no reversible error.").

**CHAIN OF CUSTODY**

Last, Shearin argues the State did not present a complete chain of custody for Michael's body after the body was removed from the Shearin home. As a result of the allegedly incomplete chain of custody, Shearin contends the blood culture results from Michael's autopsy should have been excluded. Shearin contends the State did not establish who removed and handled Michael's body or how his body was stored before the autopsy. She argues this matters because the State relied on the growth of bacteria in Michael's blood in establishing his cause of death and any bacterial growth could have been affected by how his body was stored. We respectfully disagree.

"The ultimate goal of chain of custody requirements is simply to ensure that the item [being offered] is what it is purported to be." *State v. Hatcher*, 392 S.C. 86, 95, 708 S.E.2d 750, 755 (2011). Our supreme court "has long held that a party offering into evidence fungible items such as . . . blood samples must establish a complete chain of custody as far as practicable" between the taking of the sample and the analysis. *Id.* at 91, 708 S.E.2d at 753 (citations omitted).

Though a sample of Michael's body is a "fungible" item, Michael's body is not. *See State v. Glenn*, 328 S.C. 300, 305, 492 S.E.2d 393, 395 (Ct. App. 1997) (describing fungible items as "not readily identifiable" and those that "may be easily tampered with," and non-fungible evidence as "evidence that is unique and identifiable"). Still, even if offering the blood culture results required strict proof of the chain of custody for Michael's body, the State presented sufficient evidence to support admission. Our supreme court has stated, "Generally, [the court] will uphold the chain of custody if the safeguards instituted ensure the integrity of the evidence, even if every person associated with the procedure is not personally identified." *S.C. Dep't of Soc. Servs. v. Cochran*, 364 S.C. 621, 629, 614 S.E.2d 642, 646 (2005). The testimony in this case indicated Michael's body and the autopsy samples were secure, sealed, and intact, and Shearin presented no evidence to the contrary. *See id.* at 629–30, 614 S.E.2d at 646–47 (finding DSS had sustained its burden of establishing the chain of custody where testimony indicated the blood samples were secured, sealed, and intact). The Lexington County Deputy Coroner transported Michael's body in a sealed body bag to the pathologist. The pathologist conducted the autopsy less than twenty-four hours after Michael's death. The deputy coroner and pathologist both testified to the retrieval of Michael's body, the autopsy procedures, and specifically the taking and handling of the blood samples. Thus, even if there was a missing link in the chain, as Shearin argues, we conclude the integrity of the blood results was well established and the trial court did not abuse its discretion in

permitting testimony about the results.  *See Hatcher*, 392 S.C. at 95, 708 S.E.2d at 755 ("The State need not establish the identity of every person handling fungible items in all circumstances; rather, the standard is whether, in the discretion of the trial judge, the State has established the chain of custody as far as practicable.").

We also agree with the State and trial court that any alleged issue with the storage or care of Michael's body (between death and autopsy) and how that could have affected the blood culture results goes toward the credibility of the results, not their admissibility.  *State v. Sweet*, 374 S.C. 1, 8, 647 S.E.2d 202, 206 (2007) (explaining once the chain of custody is established, "issues regarding the care of the evidence only go to the weight of the specimen as credible evidence, and not its admissibility"); *see also State v. Smith*, 326 S.C. 39, 41, 482 S.E.2d 777, 779 (1997) ("In [*State v. Kahan*, 268 S.C. 240, 233 S.E.2d 293 (1977)], we held testimony as to the care and handling of a piece of evidence kept in an evidence locker was unnecessary to establish a[n already] sufficient chain of custody and went only to the weight of the evidence.").  Accordingly, we affirm the admission of the blood culture results.

Based on the foregoing, Shearin's conviction is

**AFFIRMED.**[1]

**GEATHERS, HEWITT, and VINSON, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.